IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | | |
|---|---|---|
| CARL OLSEN and MARGUERITE CHEAIRS, in their individual and representative capacities as beneficiaries of the Wassell Randolph Family Trust, the George Randolph Trust, and the Amy Randolph Trust, and FIRST TENNESSEE BANK NATIONAL ASSOCIATION, in its capacity as successor trustee, | ) ) ) ) ) ) ) ) ) ) | |
| | ) | No. 09-2017 |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| REGIONS BANK, | ) ) | |
| Defendant. | ) ) | |

ORDER GRANTING PLAINTIFFS' MOTION TO AMEND

Before the Court is Plaintiffs Carl Olsen and Marguerite Cheairs' November 13, 2009, Motion for Leave to File Third Amended Complaint. (See Dkt. No. 25.) Plaintiffs seek to add Morgan Asset Management, Inc. ("MAM") as a Defendant in this action. (Plaintiffs' Motion for Leave to File Amended Complaint at 1-2.) ("Pls' Mot.") Defendant Regions Bank ("Regions") filed a response in opposition on November 23, 2009. (See Dkt. No. 26.) For the following reasons, the Court GRANTS Plaintiffs' Motion. Because the addition of MAM deprives this Court of diversity jurisdiction, the Court REMANDS Plaintiffs' suit to

the Chancery Court for Shelby County, Tennessee.  See 28 U.S.C.
§ 1447(e).

## I.    BACKGROUND

Plaintiffs are beneficiaries of three testamentary trusts
established by the wills of Wassell Randolph, George Randolph,
and Amy Randolph (collectively the "Randolph trusts"). (Compl.
¶¶ 4-5.)[1] From the time of Wassell Randolph's death in May 1970
until August 2004, Union Planters National Bank served as
trustee for the Randolph trusts. (Id. ¶¶ 13, 15, 18, 21.)
Union Planters National Bank merged with Defendant Regions in
August 2004. (Id. ¶ 21.)  Following that merger, the former
trust division of Union Planters National Bank became known as
Regions Morgan Keegan Trust, and it assumed the role of trustee
of the Randolph trusts.[2] (Id.)  Both before and after the
merger, David Franks, a Regions employee, served as the primary
advisor to the Randolph trusts' beneficiaries. (Id. ¶ 22.)

From their inception until the merger between Regions and
Union Planters National Bank, the Randolph trusts invested their
assets in "real estate, mortgage notes related to loans made to
the Randolph Trusts' beneficiaries, and diversified investment
securities." (Id. ¶ 23.)  After the merger occurred, the asset

---

[1] All citations to the Complaint are to the Second Amended Complaint. (See Dkt. No. 15.)
[2] Regions Morgan Keegan Trust is a division of Defendant Regions. (Compl. ¶ 21.)  Because the parties make no distinction between the trust division and Regions, the Court will refer to both as "Regions."

2

allocation of the funds changed. (Id. ¶ 24.) Regions, acting as trustee, sold trust assets to free cash to purchase proprietary bond funds offered by Regions' subsidiary Morgan Keegan. (Id.) Regions purchased shares in the Morgan Keegan Select High Income Fund, Morgan Keegan Select Intermediate Bond Fund, and the Morgan Keegan Select Short Term Bond Fund (collectively, "the Funds"). (Id. ¶¶ 25, 31.) At no time did Regions or its agent Franks disclose to the Randolph trusts' beneficiaries the condition that, if the beneficiaries ever chose to transfer the trusts from Regions, they would be required to sell the Randolph trusts' shares in each of the Funds. (See, e.g., id. ¶ 32.) Nor did Regions inform the beneficiaries that the Funds contained "a significant percentage of risky subprime, collateralized debt obligations and illiquid securities." (Id. ¶ 33.) The transfer limitations and high-risk nature of the securities allegedly made them inappropriate investments for the Randolph trusts. (Id. ¶¶ 35-36, 43, 50.) After Regions' realignment of the Randolph trusts' assets, two of the three trusts had 100% of their fixed-income portfolios invested in Regions proprietary funds. Before, they had none. (Id. ¶¶ 37, 50.)

Regions disclosed that it was having difficulty providing an accurate valuation of the Funds' shares in an August 2007 letter to the Securities and Exchange Commission. (Id. ¶ 55.)

The Funds' share values plummeted because of this disclosure. (Id. ¶ 56.) Although Regions warned other trust customers to sell their shares in the Funds before the share price dropped further, Regions allegedly did not provide such a warning to Plaintiffs. (Id. (citing an e-mail to another client who received warning).) The Randolph trusts' beneficiaries had Regions removed as trustee on August 30, 2007, requiring that all the trusts' shares in the Funds be liquidated. (Id. ¶ 62.) The Randolph trusts collectively lost $515,000 from the Funds' decline in value. (Id. ¶ 78.)

Plaintiffs filed suit on February 12, 2008, in the Chancery Court for Shelby County, Tennessee. Their suit asserts multiple state-law causes of action against Regions, including 1) breach of fiduciary duty; 2) negligence; 3) violation of the Tennessee Uniform Prudent Investor Act, Tenn. Code. Ann. §§ 35-14-101 et seq.; and 4) violation of the Tennessee Consumer Protection Act, Tenn. Code Ann. §§ 47-18-101 et seq. (Compl. ¶¶ 80-103.) Plaintiffs seek $515,000 in compensatory damages, punitive damages in an amount not less than $2.5 million, triple damages under the Tennessee Consumer Protection Act, and disgorgement of all fees Regions earned as trustee. (Id. at 28-29.)

Regions removed the suit to this Court on March 11, 2008. By order dated August 12, 2008, the Court remanded Plaintiffs' suit to the chancery court, finding that there was a colorable

basis for predicting that Plaintiffs could recover against the Defendant Franks.  (Order Granting Plaintiff's Motion to Remand, Olsen v. Regions Fin. Corp., No. 08-2157, Dkt. No. 32, at 12 (W.D. Tenn. Aug. 12, 2008).)  Because Franks was a resident of Tennessee and Plaintiffs are Tennessee residents, diversity did not exist.  (See id. at 4.)  After remand, the Chancery Court dismissed Franks as a Defendant, and Regions again removed the case to this Court on January 14, 2009, asserting diversity jurisdiction.  (See Notice of Removal, Dkt. No. 1.)  Plaintiffs now seek leave to file a Third Amended Complaint to add MAM, whose principal place of business is in Memphis, Tennessee, as a named Defendant.  (Pls' Mot. at 1); see also 28 U.S.C. § 1332(c)(1) (providing that "a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business" (emphasis added)).

## II.   STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 15, a court shall freely give leave to amend a pleading unless "the amendment is brought in bad faith, for dilatory purposes, results in undue delay or prejudice to the opposing party, or would be futile." Crawford v. Roane, 53 F.3d 750, 753 (6th Cir. 1995) (citations omitted); see also Fed. R. Civ. P. 15(a).  After a court enters a scheduling order under Fed. R. Civ. P. 16(b), the scheduling

order "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). When a party moves to amend after the court's Rule 16(b) deadline for amending pleadings, Rule 15(a) and Rule 16(b) must be analyzed together. Leary v. Daeschner, 349 F.3d 888, 909 (6th Cir. 2003). The court must consider both "Rule 15's liberal amendment mandate and Rule 16's good cause requirement." Id. at 906 (citation omitted).

Parties may establish good cause for failure to adhere to the scheduling order "by showing that despite their diligence they could not meet the original deadline." Id. at 907 (citations omitted). "Delay by itself is not sufficient reason to deny a motion to amend." Bridgeport Music, Inc. v. Dimension Films, 401 F.3d 647, 662 (6th Cir. 2004) (citations omitted), amended by 410 F.3d 792 (2005). "When amendment is sought at a late stage in the litigation," however, "there is an increased burden to show justification for failing to move earlier." Id. (internal quotations and citations omitted). "The primary measure of Rule 16's 'good cause' standard is the moving party's diligence in attempting to meet the case management order's requirements." Inge v. Rock Fin. Corp., 281 F.3d 613, 625 (6th Cir. 2002) (citations omitted). "Another relevant consideration is possible prejudice to the party opposing the modification." Id. (citations omitted).

6

Here, the Scheduling Order entered by the Court establishes September 15, 2009, as the deadline for amending pleadings and adding parties. (Scheduling Order, Dkt. No. 18.) Therefore, in considering Plaintiff's Motion, the Court must consider both "Rule 15's liberal amendment mandate and Rule 16's good cause requirement." Leary, 349 F.3d at 906.

### III.  ANALYSIS

Regions argues that Plaintiffs cannot demonstrate good cause because Regions' Answer, filed on May 7, 2009, clearly identified MAM as a potential defendant. (Defendant's Response in Opposition to Motion to Amend, Dkt. No. 26, at 2.) ("Def's Resp.") Regions further notes that Plaintiffs' counsel are involved in numerous suits against Regions about the same Funds and asserting similar causes of action; and, in some of those suits, counsel have named MAM as a defendant. (Id. at 2-3 (collecting cases).) Therefore, Regions argues that Plaintiffs have failed to demonstrate why they could not join MAM as a defendant before the expiration of the deadline to amend and to add parties. (Id. at 2-3.)

Regions is correct that Plaintiffs' counsel are involved in numerous other suits against Regions addressing the collapse of the Funds – suits in which MAM is a named defendant. See, e.g., Meritan v. Regions Bank, No. 08-0257; Adams v. Morgan Asset Mgmt., Inc., No. 09-2234; Woods v. Morgan Asset Mgmt., Inc., No.

09-2280.   In the present case, Regions' Answer to Plaintiff's Second Amended Complaint clearly identifies MAM as a relevant defendant.   The fifteenth defense Regions asserts states that it "reasonably delegated" all "investment functions related to Plaintiffs' account" to MAM.   (Answer, Dkt. No. 17, at 5.) Regions filed its Answer on May 7, 2009:   more than four months before the expiration of the September 15, 2009, deadline to add parties and six months before Plaintiffs filed their Motion to Amend.  (Id. at 1.)  Because Plaintiffs' amendment fails "to add anything new – anything [they] did not already know before the pleading deadline came and went," Plaintiffs have failed to demonstrate good cause to amend the Scheduling Order.  Shane v. Bunzl Distrib. USA, Inc., 275 F. App'x 535, 536 (6th Cir. 2008).

Even where a plaintiff has failed to demonstrate good cause, the defendant must articulate and the Court must find "at least some significant showing of prejudice" to deny the Motion to Amend.  Duggins v. Steak 'n Shake, Inc., 195 F.3d 828, 834 (6th Cir. 1999) (internal quotation marks and citation omitted); see also Leary, 349 F.3d at 909 (noting that courts must consider prejudice in addition to the good-faith requirement). Delay alone is not enough.  Duggins, 195 F.3d at 834.  Regions argues that the prejudice is clear:  adding MAM would destroy diversity and require a remand to state court, depriving it of the benefits of a federal forum.  (Def's Resp. at 1-2.)

This case is not at a late stage in the proceedings: the discovery and dispositive motion deadlines have not passed. See Duggins, 195 F.3d at 834 (finding significant prejudice where both deadlines had passed); Shane, 275 F. App'x at 537 (finding significant prejudice where discovery deadline passed after court had extended it twice). Indeed, the entire procedural history of this case has been an extended dispute about whether it will be heard in a state or federal forum. The case has been remanded before and removed to the Court a second time. Both parties, thus, have engaged in extensive procedural fencing, making any prejudice specific to Regions difficult to discern. Regions' Answer demonstrates that MAM is a proper party to this suit. (Answer at 4.) That Answer makes evident that Regions, through its extensive involvement in related litigation about the Funds' failure, is well aware of the legal claims it would face should MAM be joined as a defendant. (See Def's Resp. at 2-3.) Thus, there would be no prejudice to Regions because of the addition of unexpected legal issues. Cf. Duggins, 195 F.3d at 834 (finding significant prejudice where the defendant would have to "prepare a defense for a claim quite different from the [original] claim that was before the court").

The Federal Rules of Civil Procedure value testing a plaintiff's claims on the merits over allowing technicalities to truncate review. See Foman v. Davis, 371 U.S. 178, 181-82

(1962).   There is also no question that the chancery court is able to give both parties the full relief to which they may be entitled.   Cf. Idaho v. Coeur d'Alene Tribe of Idaho, 521 U.S. 261, 275 (1997) (holding that there are no due process concerns with a state tribunal deciding legal questions as long as it has adequate procedures and authority to order any necessary relief).   Because the Court finds that no significant prejudice would result if the amendment were allowed and the Court does not find that Plaintiff has offered the amendment in bad faith or out of a dilatory motive, the Court GRANTS Plaintiffs' Motion to Amend and JOINS MAM as a Defendant.   See Foman, 371 U.S. at 182; Duggins, 195 F.3d at 834.

**IV.   CONCLUSION**

For the foregoing reasons, the Court GRANTS Plaintiffs' Motion to Amend.   Because it is undisputed that MAM has its principal place of business in Memphis, Tennessee, and Defendant's sole basis for removal jurisdiction is diversity, the addition of a Tennessee Defendant removes the Court's subject matter jurisdiction.   (See Notice of Removal, at 2-3.) The Court, therefore, REMANDS this case to the Chancery Court for Shelby County, Tennessee, for service of process on MAM and all future proceedings.   See 28 U.S.C. § 1447(e).

So ordered this 23rd day of June, 2010.

s/ Samuel H. Mays, Jr.
SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE